IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ROBERT SCHINDLER, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 08 C 6703 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| UNIVERSITY OF ILLINOIS AT CHICAGO | ) | |
| LEGAL COUNCIL, University of Illinois President | ) | |
| JOSEPH B. WHITE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Schindler ("Plaintiff"), pro se, filed a rather verbose 38-page complaint against defendant The Board of Trustees of the University of Illinois—mistakenly named as the "University of Illinois at Chicago Legal Council"—and the University President, Joseph B. White (collectively, "defendant"), alleging various wrongs. These allegations arose primarily out of an October 2007 incident in which plaintiff, a University of Illinois student, was involved. Defendant now moves to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 8 and 12(b)(6) on the ground that the complaint does not cognizably state the multiple causes of action in a manner that gives defendant adequate notice of the claims or, alternatively, does not state a claim for which relief can be granted. For the reasons discussed below, defendant's motion to dismiss is granted.

## BACKGROUND

In October of 2007, plaintiff was placed under arrest and charged with disorderly conduct on the allegation that he had entered a woman's restroom and looked under a stall door at a young woman who was inside. Plaintiff, who is legally blind, claims that the incident was a result of inadequate signage designating the restrooms, and his attempt, once inside, to find out if

he was actually inside a restroom. Nevertheless, the young woman reported the incident to University police, who apprehended plaintiff shortly thereafter.

Plaintiff alleges several events that followed this incident upon which he bases his complaint. First was defendant's demand that he appear before the Student Affairs Judicial Committee ("SAJC") for a hearing pertaining to the October restroom incident. Plaintiff claims he felt pressured to attend, lest his status at the University be threatened. He obtained an attorney to represent him at the proceeding. Both sides—that is, plaintiff and the alleged victim—were instructed to bring all relevant evidence with them to plead their respective cases. At the close of the proceeding, the SAJC found that plaintiff had been in violation of the University rules and had engaged in actions that injured the "community interest." He received a one year suspension as a punishment.

Another incident concerned an arrest for a bail bond violation. In an initial hearing for his disorderly conduct charge, the court barred him from being in the presence or vicinity of the victim. Three days later, Chicago police arrived at his house and placed him under arrest, claiming that the victim had reported a violation of that order. He was later released on bail and the violation charge was eventually dropped by the State's Attorney.

Plaintiff was represented by appointed counsel at his criminal trial for disorderly conduct. He was found guilty. After his trial, plaintiff's attorney requested leave to withdraw from the case, citing an inability to work with plaintiff due to significantly varying views on how the case should be handled. At that time, plaintiff chose to represent himself pro se, and that is also how he brings the instant action.

Based on these incidents, plaintiff alleges numerous counts for which he seeks equitable and monetary relief, and punitive damages. His complaint covers a lengthy gamut of actions by defendant that he claims violated his civil rights, his Fifth and Fourteenth Amendment rights, and his rights as a citizen under the Illinois Constitution.

## DISCUSSION

*Standard of Review*

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to rule on its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). For purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1428 (7th Cir.1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do ...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. In addition, plaintiff is a pro se litigant, the court must be mindful that his pleadings should be construed liberally, since the standard of sufficiency for a pro se litigant is not as high. *Thomas v. Clark*, 48 F.3d 1222 (7th Cir. 1995).

*Federal Claims*

Of plaintiff's 14 count complaint, only counts four and five allege federal claims. The remainder of his claims are based on state law. The feasibility of the federal claims bears directly on whether the court will exercise supplemental jurisdiction over the state claims, and so they provide an appropriate starting point. In these counts, plaintiff alleges violations of his Fifth and Fourteenth Amendment rights. His Fifth Amendment claim is not entirely clear; there are two possible interpretations that could result from the plaintiff's allegations. Neither interpretation, however, would be sufficient to defeat defendant's motion to dismiss.

The first possibility is that plaintiff is claiming that his Fifth Amendment due process right was violated by way of his "need" to give his side of the story during his criminal trial. Specifically, plaintiff claims the situation was a "she said he said case," and *not* testifying at his trial would not have given him a chance to tell his side of the story, which he wanted to do. He thus concludes that he was compelled to testify. This claim fails, however, because plaintiff admits in the same paragraph in which he alleges he was "compelled" to testify that he did so voluntarily. He cannot seriously claim that defendant "compelled" him to testify against himself simply because he, again, by his own admission, wanted to give his side of the story.

The second interpretation that can be drawn from plaintiff's Fifth Amendment claim is that defendant's request that he appear before the SAJC prior to the trial on his disorderly conduct charge was a violation of his Fifth Amendment right against self-incrimination. But this interpretation also fails, primarily because plaintiff does not give any indication as to whether the testimony he gave in his defense during the disciplinary proceeding was used in his trial. He does not mention or suggest that he attempted to assert his Fifth Amendment privilege or delay

4

the disciplinary proceeding while his criminal trial was pending, and he was represented by counsel during the disciplinary proceeding. In short, plaintiff simply offers no evidence at all that he was forced to testify at either the disciplinary hearing or the December 2007 trial against his will. Just the opposite, actually; plaintiff felt he needed to testify to give his side of the story. There is a large difference between being compelled to testify and feeling compelled to testify.

The Fifth Amendment right against self-incrimination is waivable. "Although the privilege against compulsory self-incrimination prevents the prosecution from calling the defendant as a witness, the accused may choose to speak. If he does, he waives the privilege with respect to all subjects covered on direct examination." *Hunter v. Clark*, 934 F.2d 856, 865 (7th Circuit 1991) (Easterbrook, J., concurring). Plaintiff admits in his pleadings that he gave his testimony in both the disciplinary hearing and the December 2007 trial voluntarily. Because there was no violation of plaintiff's Fifth Amendment rights, plaintiff cannot legally state a claim on Fifth Amendment grounds.

Further, even if plaintiff's allegations could state a cognizable claim under federal law, his Fifth Amendment claim would be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* stands for the principle that following a conviction, a plaintiff cannot bring a civil claim for damages which, if granted, would create an implication that the criminal conviction was invalid. *Id*. The only way around this bar would be for plaintiff to have the conviction invalided, that is, "reversed on appeal, expunged by executive order, declared invalid by an [authorized] state tribunal…or called into question by…issuance of a writ of habeas corpus." *Thompson v. Williams*, 2009 WL 1766774, *2 (N.D. Ill. 2009). Further, *Heck* does not apply only to claims brought under 42 U.S.C. §1983, as was the issue in that case, but can apply to any civil-rights

suit that seeks damages. *Shelby v. Gelios*, 287 Fed.Appx. 526, 529 (7th Cir. 2008). Plaintiff here does not explicitly cite to any particular statute that encompasses his claim; rather, he simply alleges that his Fifth Amendment rights were violated, and seeks damages to compensate him for the alleged violations. As such, his claim falls under the scope of *Heck* and is barred. For these reasons, Count IV of plaintiff's complaint is dismissed.

Plaintiff's other federal claim alleges that defendant violated his constitutional right to equal protection. He alleges that defendant's improper signage, which was allegedly the catalyst for this entire chain of events, denied plaintiff, as a visually disabled person, equal protection of the law. Plaintiff makes this claim despite also attaching a U.S. Department of Education report stating that defendant is in compliance with both Title II of the Americans with Disabilities Act (42 U.S.C. §12131) and section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §791).

Allegations that a litigant's right to equal protection was violated are examined with differing levels of scrutiny, depending on whether the class in question, in this case persons with disabilities, are a "suspect" or "quasi-suspect" class. In *City of Cleburne, Tex v. Cleburne Living Center*, 473 U.S. 432 (1985), the court held that persons with disabilities are neither a suspect nor a quasi-suspect class, and as such, any claim of an Equal Protection violation premised upon disability is only subject to a rational basis standard of review. *Id.* That is, if the court can find a rational basis for the behavior of the defendant, in the manner in which it maintains its signs and accommodations for the disabled, plaintiff's equal protection claim must fail.

Bearing that in mind, it is hard to conceive that such a rational basis does not exist, when by plaintiff's own admission, defendant is in compliance with both the Americans with Disabilities Act of 1990 ("ADA") and the Rehabilitation Act, the two federal statutes with the

6

core function of protecting the rights of persons with disabilities. Plaintiff's admission comes in the form of an extensive Department of Education Office for Civil Rights ("OCR") investigation, conducted at plaintiff's request, for alleged ADA violations. Plaintiff attaches the report tendered to him after the close of that investigation, which states in pertinent part: "Based on the analysis of the evidence obtained during the course of its investigation, OCR determined that the evidence is insufficient to establish a violation of the applicable regulations regarding the allegations in this case." The allegations plaintiff submitted to OCR for investigation were identical or substantially similar to the ones made in this case.

Consequently, plaintiff cannot dually allege that the defendant treated him unequally while at the same time attaching an extensive report that concludes that defendant is in compliance with the regulations of the two federal statutes aimed at protecting persons with disabilities. The court finds that defendant's actions are sufficient under the rational basis standard of review, and even accepting plaintiff's claim as true, it cannot survive. Thus, Count V of plaintiff's complaint is dismissed.

*State Law Claims*

The remaining counts allege state law claims against defendant. Once all federal claims have been eliminated, a district court may exercise its discretion to dismiss supplemental state law claims, without prejudice, and it is generally appropriate to do so. *Groce v. Eli Lily & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). There are exceptions to this general rule in "unusual cases" only, such as when substantial federal judicial resources have already been committed, or if it is abundantly clear how the state claims should be decided. *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994). Given the relatively early stage of this case, these exceptions do

not apply. Accordingly, the court declines to exercise supplemental jurisdiction over the remaining state law and Illinois State Constitution claims in Counts I, II, III, and VI-XIV. 28 U.S.C. § 1367(c)(3).

## **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss plaintiff's complaint is granted. Counts IV and V of the complaint are dismissed with prejudice for failure to state federal claims; the remaining counts are dismissed without prejudice.

**ENTER:** **August 20, 2009**

                                              **Robert W. Gettleman**
                                              **United States District Judge**